## LANE, ADMINISTRATOR, v. BOWES.

[No. 4,350.    Filed June 19, 1903.    Rehearing denied January
27, 1904.]

APPEAL AND ERROR.—*Bill of Exceptions.*—*Authentication.*—A bill of
exceptions is not sufficiently authenticated, where the only certifi-
cate of the judge consists of the words, "Presented to me
for signature December 20, 1901." *pp. 331, 332.*

NEW TRIAL.—*Claim Against Decedent's Estate.*—*Misconduct of Adminis-
trator in Assisting Plaintiff.*—Plaintiff filed a claim against a dece-
dent's estate of which U. was the administrator. After trial and
verdict for plaintiff, U., resigned the trust and L., sole heir at law,
was appointed administrator *de bonis non.* There was filed a mo-
tion for a new trial on the ground that plaintiff had been guilty
of misconduct in procuring the administrator to hunt up evidence
for plaintiff and suppress evidence for the defense. Affidavits
supporting the motion also showed that during the trial U. had
frequent conferences with plaintiff and her attorneys. Counter-
affidavits setting forth the justness of the claim sued for and a
denial that U. had hunted up evidence on behalf of the plaintiff
were filed. *Held,* that since it appeared that L. and his counsel
were present during the trial and made no objection to the con-
duct of U. and the plaintiff, and that, since no material evidence
was shown to have been procured or suppressed through the ef-
forts of U., a new trial was properly denied. *pp. 332-337.*

From Elkhart Circuit Court; *J. D. Ferrall,* Judge.

Action by Elizabeth Bowes against the estate of
Augusta Lane, deceased. From a judgment for plaintiff,
Clark Lane, as administrator *de bonis non,* appeals.
*Affirmed.*

*J. M. Van Fleet* and *V. W. Van Fleet,* for appellant.
*L. W. Vail, P. L. Turner* and *E. D. Salsbury,* for
appellee.

BLACK, J.—The appellee, Elizabeth Bowes, filed a claim
against the estate of Augusta Lane, deceased, for personal
service, in the form of a complaint in three paragraphs.
No pleading was filed by the administrator. A trial by
jury resulted in a verdict in favor of the appellee for

$5,000. It is assigned here that the court erred in overruling the defendant's motion for a new trial.

During the proceedings, until after judgment, and until after the subsequent filing of the motion for a new trial, the decedent's estate was represented by Milton M. Ullery, administrator. Pending the motion for a new trial, upon his showing that he had resigned the administratorship, and that his resignation had been accepted, and that Clark Lane, the widower and sole heir at law of the decedent, had been appointed and duly qualified as administrator *de bonis non,* the court ordered that Clark Lane, administrator *de bonis non,* be substituted as defendant; and he brings this appeal.

It is urged on behalf of the appellee that no question arising upon the evidence can be considered, because what purports to be a bill of exceptions containing the evidence is not properly authenticated by the trial judge. Immediately following the certificate of the official shorthand reporter attached to his typewritten report of the evidence is written the following: "Presented to me for signature December 20, 1901." This is signed by the judge. There is no other signature of the judge to this bill. There is no certificate or statement purporting to show that the bill was examined and approved or allowed by the judge; only the above statement signed by him showing the date of presentation. To bring the evidence to this court, it must be embodied in a proper bill of exceptions *(Rohrof* v. *Schulte,* 154 Ind. 183); and a bill of exceptions must have a proper conclusion, as well as a proper commencement *(Jenkins* v. *Wilson,* 140 Ind. 544).

In *Harvey* v. *State,* 5 Ind. App. 422, at the foot of what purported to be a bill of exceptions, was a certificate of the trial judge that "the foregoing and within bill of exceptions in the case of * * * was tendered to me for my signature on * * * and within the time given for preparing the same, to wit, within sixty days after judg-

ment was rendered in said cause." This was signed by the trial judge. It was held that the bill was not properly in the record. The court said: "It is not enough that the document should be presented to the judge and the fact of such presentation certified to by him, but it must be examined, and if found correct, that fact also must be attested by his official signature." We, therefore, are constrained to agree with the appellee that the evidence is not properly before this court.

One of the reasons stated in the motion for a new trial is misconduct of the appellee in procuring, suffering, and allowing the defendant administrator to violate his sworn duty by hunting up evidence for her and suppressing evidence in behalf of the defense, by actively and openly, in the presence of the jury, aiding and assisting her and her counsel at the trial in the examination of witnesses, and otherwise in the prosecution of her case.

Affidavits in support of this cause for a new trial, and affidavits in opposition thereto, were submitted. Clark Lane swore that he was the sole heir at law of the decedent; that he was informed and believed that Ullery, the administrator, upon the procuration of the appellee, did hunt up, search for, and discover evidence for her to use in maintaining her claim upon the trial, which evidence she did use upon the trial; that affiant was present at the trial, and saw the administrator sitting beside the appellee and her counsel during the whole trial, and saw him in consultation with her and her counsel during the examination of her witnesses, and affiant "verily believes" that the administrator was suggesting questions to her and to her counsel to ask the witnesses; that he never once during the trial made a suggestion to his own counsel, or aided him in any manner; and that all these things took place in the presence of the jury. Later, in an additional affidavit, Clark Lane swore that he had no information or knowledge concerning the appellee's procuring the administrator to hunt

up and search for evidence, which he found and the appellee used, until long after the return of the verdict, and that he received such information from his own counsel, named, and from no other person.   The affidavit of the attorney so mentioned was filed, in which he swore that he first received information that the administrator had been hunting up and procuring evidence for the appellee, or aiding her in any manner, long after the verdict, which information he gave to Clark Lane, and that affiant got such information from the administrator himself.   The affidavit of the partner of said attorney was filed, in which the affiant swore that the trial was conducted entirely by the affiant's partner, the attorney whose affidavit is mentioned above, and that affiant had no notice or knowledge of misconduct of the appellee in procuring the administrator to hunt up and search for evidence, or of any misconduct of the administrator or of the appellee, until after the trial, when he was first informed of the same by affiant's said partner.

Milton M. Ullery's affidavit was submitted, in which he swore that he was the administrator defendant; that he had been acquainted with the appellee for many years, and was married to her niece; that he was familiar with the appellee's claim and with the facts as they came to him as a matter of family history relating to appellee's many years of service in the family of Dean Swift, and for the decedent, Augusta Lane; that he believes her cause to be just; that he applied for letters as administrator at the request of the appellee's attorney, named, upon his statement to affiant that it was necessary for somebody to take out letters in order that he might bring the appellee's action; that he would have allowed the claim in the sum of $10,000 if he had not been served with a notice by the attorneys, named, of Clark Lane, soon after his appointment as administrator, which notice was set out as follows:  "To Milton M. Ullery, administrator of the estate of Augusta Lane, de-

ceased: You are hereby notified that I, Clark Lane, am the widower and sole heir at law of the said decedent, Augusta Lane; that there are no just claims against her estate; and I hereby notify you that if any claims are filed against her estate, to disallow them, and I will defend against them at my own expense. If you allow any claims against her estate, ·I will hold you responsible therefor on your bond." This was dated and signed with the name of Clark Lane, by his attorneys, named. Milton M. Ullery, in his affidavit, swears also that he believes from his personal knowledge, and from all the facts and circumstances which he has learned from neighbors and friends, that the appellee is, justly entitled to recover $10,000 from the decedent's estate; that he knows· of no available defense against this claim; that he believes that Clark Lane is fully familiar with the facts which make this estate indebted to the claimant in that sum, and is making an unjust defense against the claim for the sole purpose of saving the moneys of the estate for himself, and not for the purpose of doing justice to the estate; that affiant has not suppressed or attempted to suppress any evidence on behalf of the defense of the claim, but he has given the fullest and freest opportunity to Clark Lane to make ·any and all defense that he might choose to make. In an additional affidavit of Milton M. Ullery he swore to the same effect, and also that he did not hunt up any evidence on behalf of the appellee.

The affidavit of the attorney for the appellee was supplied, in which he swore that he was counsel for the appellee in the cause and had the management of her case from the beginning; that as such attorney, and acting on her behalf, prior to the appointment of an administrator, he personally called upon Clark Lane and demanded of him that he pay, or make arrangements to pay, the claim, which he refused; that affiant then charged Lane with dissipating the estate, and giving away large sums without

Lane v. Bowes.

paying the just debts of the estate, and asked him if he intended to take out letters of administration; that Lane replied that he did not intend to do so, that it was not necessary, that the estate did not owe the appellee anything, but that he intended at some time to give her $200; that affiant then informed Lane that he intended promptly to make arrangements to bring an action for the enforcement of the appellee's claim, and was told by Lane to take such course as he chose, that he, Lane, had a witness to all the transactions; that after this conversation affiant advised his client that it would be necessary for her to take out letters of administration in order to bring her suit and enforce her claim, but she replied that she did not feel competent to undertake it; whereupon affiant procured Milton M. Ullery, a nephew of appellee by marriage, to act as administrator, who, on the day following said conversation with Lane, made application and procured letters of administration upon the estate; that afterward the affiant and Ullery were served by Lane's attorneys, named, with a notice, set out in this affidavit, being the same notice set out in Ullery's affidavit above mentioned; that thereupon affiant, acting for and upon behalf of the administrator, marked the claim of the appellee, upon the claim docket, "Disallowed," and the claim came upon the trial docket by agreement between the attorneys for Lane and the attorney for the appellee, and at the trial of the cause it was vigorously defended by Lane, according to the terms of said notice; that affiant is not aware that the said administrator suppressed any evidence upon behalf of the defense, and does not believe that he did so, but believes that he gave Lane the fullest, freest, and fairest opportunity to make every defense available on behalf of the estate; and that affiant is of the opinion and belief that there was no available defense to the appellee's cause of action.

Under our statute relating to the settlement of decedents' estates, in the granting of letters of administration,

preference is to be given in the following order: (1) To the widow or widower; (2) to the next of kin; (3) to the largest creditor applying and living in this State; (4) if no person thus entitled shall apply within twenty days after the death of the intestate, any competent inhabitant of the county may be appointed. §2380 Burns 1901.

The administrator has authority to admit or refuse to admit a claim in writing on the margin of the appearance docket, though the court may require further proof notwithstanding the personal representative may have admitted it. §2474 Burns 1901.

A claim in favor of the personal representative which accrued before the death of the decedent may be filed against the estate. It is not to be allowed by the personal representative, but in such case the judge of the court represents the estate, and is to examine into the nature of the claim, and if by the court it be deemed just and right the court shall allow the claim. If the court be of the opinion that the interest of the estate will be promoted by active opposition, the court is to appoint a practicing attorney to represent the estate, and the same pleadings and trial may be had as in other claims. §2476 Burns 1901.

It is the duty of an executor or an administrator to inquire into the correctness of all claims filed against the estate, and to make all available defenses thereto; and if he fail to do so he will be liable on his bond, at the suit of any person interested in the estate, for all damages sustained by the estate in consequence of such neglect. §2477 Burns 1901.

Provision is made whereby any person interested in the estate may be allowed at his expense to defend a claim which has been filed against the estate, and which has been allowed by the personal representative, notwithstanding such allowance. §2481 Burns 1901.

This cause for a new trial does not seem to need much discussion in addition to the affidavits relating to it. The

Lane *v.* Bowes.

appellant waived his right to take upon himself the administration of the estate, and knowingly and purposely gave occasion for the appointment of an administrator upon the procurement of the creditor. The appellant and his counsel were present at the trial, and made no objection to the conduct of the appellee or the administrator in the presence of the court and jury. The situation was well understood, and there was acquiescence in the attitude of the administrator, as was to have been expected after the interview between the appellant and appellee's attorney. The court had knowledge of what took place in its presence at the trial, and has not by bill of exceptions shown any conduct which would tend to interfere with the due administration of justice, or that any objection was made or exception taken in relation to the conduct of any of the parties. There is no statement in any of the affidavits of any evidence that was procured through the alleged efforts of the administrator, or any showing that the evidence procured, if any, was material; nor is it shown what evidence was suppressed, or that any evidence suppressed was material. Furthermore, the court could accept as true the statements in the counter-affidavits that the administrator did not suppress any evidence favorable to the estate, and did not hunt up any evidence for the claimant.

It is the duty of an administrator, under the proper supervision of the court, to conduct himself in the care for and preservation of the estate, and in his resistance to unjust or excessive claims, with prudence, diligence, and honesty; but this case does not present an occasion for determining what conduct will constitute a violation of such duty, or the effect of such violation of duty in a case like the one at bar. We can not determine that there was probably a material interference with the due presentation of the cause by reason of any misconduct of the appellee.

Vol. 32—22

Objections are urged by the appellant to certain instructions given to the jury. The appellee by her complaint did not seek the enforcement of the contract under which she rendered services, for which, by the terms of the contract, at different times renewed, she was to receive certain real estate upon the death of the intestate's mother and the death of the intestate; but the appellee sought, and the instructions only authorized, the recovery of the value of the services actually rendered under the contract. See *Wallace* v. *Long*, 105 Ind. 522, 55 Am. Rep. 222; *Schoonover* v. *Vachon*, 121 Ind. 3; *Miller* v. *Eldridge*, 126 Ind. 461; *Taggart* v. *Tevanny*, 1 Ind. App. 339; *Nelson* v. *Masterton*, 2 Ind. App. 524; *Knight* v. *Knight*, 6 Ind. App. 268.

We do not find any error in the record. Judgment affirmed.